BRIDGES, J.,
for the Court:
¶ 1. This appeal comes from the Circuit Court of Grenada County, Honorable Joseph H. Loper Jr. presiding, where Myles Wiseman was convicted of one count of uttering a forgery and was sentenced to serve a term of fifteen years in the custody of the Mississippi Department of Correc- ' ms as a habitual offender. On appeal to Mirt, Wiseman raises two issues
1. WHETHER THE STATE PROVED BEYOND A REASONABLE DOUBT THAT APPELLANT HAD KNOWLEDGE THAT THE CHECK WAS A FRAUDULENT INSTRUMENT?
2. WHETHER OR NOT THE TRIAL COURT ERRED BY OVERRULING THE APPELLANT’S MOTION FOR A DIRECTED VERDICT OR IN THE ALTERNATIVE, MOTION FOR A JUDGMENT NOTWITHSTANDING THE VERDICT?
Finding no error, we affirm.
STATEMENT OF THE FACTS
¶ 2. On December 20, 1997, Myles Wise-man entered Spain’s Supermarket in Grenada, Mississippi. Wiseman and the State offered conflicting views of what happened that night. According to Wiseman’s testimony, while there he bought a few items and was waiting near the customer service desk when the facts from which this case is based arose. Wiseman claims he saw a young man at the customer service desk trying to cash a check. Wiseman testified that the young man appeared nervous, and the store clerk was examining the check while she called her boss in the back of the store.
¶ 3. Wiseman testified he approached the young man and told him that if he was doing something wrong then he should get out of there because in Wiseman’s opinion the young man was about to get arrested. The young man turned to leave but stopped to pick up some things he dropped on the ground. Wiseman bent down to help the young man and picked up several checks, some money, and the young man’s identification, but was unable to return them to the young man because the young man left. As Wiseman stood up, the owner of the store was there holding the check, and so were the police. Wiseman was arrested and taken to the precinct.
¶4. The version of the facts that the State put on during its case was much different. The store clerk, Michelle Beach *979 Wiggins, testified that on December 20, 1997, she was working the customer service desk at Spain’s Grocery Store in Grenada. She claimed the appellant approached her at the desk and stated he wanted to have a check cashed. Upon examination of the check, Ms. Wiggins discovered the check was from the George Garner Insurance Company and that the check was made out to a person named Igen Troy Stewart. Ms. Wiggins and everyone who worked at the store were on notice that some checks had been stolen from the Garner Insurance Company, and that they were not to cash any of these checks.
¶ 5. Ms. Wiggins then asked for some identification from the appellant, and he offered her a Tennessee driver’s license in the name of Igen Troy Stewart. She then called the back of the store and talked with Mrs. Angie Golding. Mrs. Golding is the wife of the owner of the store, Mr. Tim Golding, whom she called to ask what Wiggins should do. Mr. Golding told her to stall him while he called the police. Mr. Golding also called one of his male employees, Marshall Jones, to go up to the front of the store with him to wait while the police came. Mr. Golding then went to the front of the store and asked Wiseman for the check and his identification. Wiseman gave them to him. Then Mr. Golding asked Wiseman to endorse the check. Wiseman did so and then bent over to tie his shoes.
¶ 6. The police had arrived by this time, and as Wiseman was standing back up, they took him into custody. While they were arresting him, the police found several more checks made out to Igen Tory Stewart in his wallet. When asked for his name, the defendant responded that his name was Kerry Johnson. After Wiseman was read his Miranda rights, one of the police officers, Officer Lee Murphree, testified that while he was explaining to Wise-man the reason they were arresting him, that Wiseman stated, “[T]hat we had him — I want to say dead to right, but he was caught trying to pass that check.” It was at the police precinct, while signing a waiver that Wiseman revealed to the police that his true name was Myles Wiseman.
¶ 7. Wiseman was charged with uttering a forgery, and he was tried on the nineteenth and twentieth of August 1999. Wiseman was found guilty by the jury of the crime of uttering a forgery and was sentenced to fifteen years in the custody of the Mississippi Department of Corrections as a habitual offender. After the judgment was entered by the trial judge, Wise-man filed a motion for a directed verdict or, in the alternative, a judgment notwithstanding the verdict. The trial judge dismissed Wiseman’s motion, and Wiseman now appeals to this Court.
ANALYSIS OF THE LAW
STANDARD OF PROOF
¶ 8. The standard that must be proven to show the crime of uttering a forgery is laid out in statute at § 97-21-59 of the Mississippi Code. It is:
Every person who shall be convicted of having uttered or published as true, and with intent to defraud, any forged, altered, or counterfeit instrument, or any counterfeit gold or silver coin, the forgery, altering, or counterfeiting of which is declared by the provisions of this chapter to be an offense, knowing such instrument or coin to be an offense, knowing such instrument or coin to be forged, altered, or counterfeited, shall suffer the punishment herein provided for forgery.
Miss.Code Ann. § 97-21-59 (Rev.1994).
¶ 9. The standard of review for denial of a judgment notwithstanding the verdict and directed verdict are identical. American Fire Protection, Inc. v. Lewis, 653 So.2d 1387, 1390 (Miss.1995). Under this standard, this Court uses the following analysis:
[The evidence is considered] in the light most favorable to the appellee, giving *980 that party the benefit of all favorable inference that may be reasonably drawn from the evidence. If the facts so considered point so overwhelmingly in favor of the appellant that reasonable men could not have arrived at a contrary verdict, [then the Court is] required to reverse and render. On the other hand if there is substantial evidence in support of the verdict, that is, evidence of such quality and weight that reasonable and fair minded jurors in the exercise of impartial judgment might have reached different conclusions, affirmance is required.
Id. (citations omitted). In other words, the Court must consider the motion in a light most favorable to the party opposing the motion. Eselin-Bullock & Assocs. Ins. Agency, Inc. v. National Gen. Ins. Co., 604 So.2d 236, 240 (Miss.1992).
DISCUSSION
WHETHER THE STATE PROVED BEYOND A REASONABLE DOUBT THAT APPELLANT HAD KNOWLEDGE THAT THE CHECK WAS A FRAUDULENT INSTRUMENT?
¶ 10. Under this assignment of error, Wiseman argues that the State was unable to prove Wiseman actually knew the instrument was a fraudulent instrument because, as he claims, he did not offer it to be cashed, but only picked it up when some young man dropped it. His knowledge that the check was fraudulent is important, as it is one of the elements that must be shown to prove a case of uttering a forgery under the statute. Miss.Code Ann. § 97-21-59 (Rev.1994). The evidence in this case must show Wise-man offered the check “knowing such instrument or coin to be forged” in order for his conviction to be upheld. Miss.Code Ann. § 97-21-59 (Rev.1994).
¶ 11. In the case of Barnwell v. State, 567 So.2d 215 (Miss.1990), a very similar attack was made by a defendant upon his conviction for uttering a forgery. One of the grounds upon which Barnwell attacked his conviction was that the State did not put on enough evidence to show he had knowledge the instrument was fraudulent to survive a directed verdict. Barnwell v. State, 567 So.2d 215, 217 (Miss.1990). In that case, the Mississippi Supreme Court, in determining the sufficiency of the State’s evidence, looked at all of the evidence the State presented and determined that the State had presented enough evidence to survive the motion, especially in light of the fact that Barnwell failed to present evidence to the contrary. Id. at 218.
¶ 12. The amount of evidence presented by the State in the Barnwell case is less than that presented by the State in this case. During the trial, the State and Wiseman both put on conflicting versions of what happened. While Wiseman claims he was only helping someone by picking up the things the young man had dropped, all of the witnesses for the State testified it was in fact Wiseman who stood at the customer service counter and offered the check to be cashed. None of the witnesses for the State testified there was any young man there at all. The State, in addition, put on evidence that Wiseman did ask for the check to be cashed, that he provided false identification when asked for it, and he even endorsed the check in the plain sight of the store owner. When Wiseman was arrested, the police found more checks made out to Igen Troy Stewart in his wallet. On top of all of this, the State put on evidence through the testimony of Officer Murphree that Wiseman confessed to the crime on his way out of the store.
¶ 13. The evidence presented to the jury was more than enough to show Wise-man had knowledge that the instrument was fraudulent. When dealing with conflicting evidence, “Matters regarding the weight and credibility of the evidence are to be resolved by the jury.” McClain v. State, 625 So.2d 774, 778 (Miss.1993). What Wiseman really disagrees with is the fact determinations made by the jury. The jury was presented with evidence from the State and from Wiseman, and the *981 jury decided it agreed with the State. The jury in this case, based on the facts above, determined enough evidence was put on to prove Wiseman had the requisite amount of knowledge to meet the elements of the crime. For this reason, we find no error and affirm.
WHETHER OR NOT THE TRIAL COURT ERRED BY OVERRULING THE APPELLANT’S MOTION FOR A DIRECTED VERDICT OR IN THE ALTERNATIVE, MOTION FOR A JUDGMENT NOTWITHSTANDING THE VERDICT?
¶ 14. In this issue, Wiseman claims the trial court’s denial of his motion for a directed verdict or, in alternative, for a judgment notwithstanding the evidence is in error for essentially the same reasons he cites above. Wiseman claims the State was unable to prove Wiseman had the knowledge necessary to convict him of uttering a forgery. In addition, he also argues that because the owner of the grocery store, and those who worked for him, knew they were not going to cash the check, that this somehow vacates some element of the crime of uttering a forgery. We do not find these arguments convincing.
¶ 15. First of all, in examining the denial of a directed verdict or JNOV by the trial court, this Court is to apply the standard stated above: to consider the motion in the light most favorable to the non-moving party or, in this case, the State. Eselin-Bullock & Assocs. Ins. Agency, Inc. v. National Gen. Ins. Co., 604 So.2d 236, 240 (Miss.1992). In doing so, this Court must also give the prosecution the benefit of all favorable inferences that may be reasonably drawn from the evidence, and if the evidence is sufficient to support the guilty verdict, then find the lower court acted properly. McClain v. State, 625 So.2d at 778. Washington v. State, 726 So.2d 209, (¶ 9) (Miss.Ct.App.1998).
¶ 16. In looking at the evidence and the inferences that can be drawn from it in the light most favorable to the State, this Court must agree with the ruling of the trial court. There was more than enough evidence presented in this case not only for a jury to decide Wiseman had the required amount of knowledge to meet the elements of uttering a forgery, but also for this Court. As stated above, the testimony of the State’s witnesses, Wiseman’s presenting false identification, Wiseman’s possession of the other checks for Igen Troy Stewart, and Wiseman’s admission to the police, all taken together, make it very easy to find that he had knowledge of the forged instrument. It is completely reasonable to reach this conclusion; therefore, the State succeeded in proving all of the elements of the crime of uttering a forgery.
¶ 17. Wiseman also argues that because the owner of the store and his workers were not going to cash the check, that the fact they had knowledge the check might be a forgery somehow makes it impossible for Wiseman to be guilty of uttering a forgery. Nowhere in the statute which sets out the elements of uttering a forgery does it state that the knowledge of third parties negates the crime of uttering a forgery. Miss.Code Ann. § 97-21-59 (Rev.1994). The only reference to knowledge in this statute is to the defendant’s knowledge of the forged instrument, and as shown above, there was plenty of evidence proving Wiseman had such knowledge. We find this argument very unpersuasive, and we affirm the trial court’s decision.
¶ 18. In conclusion, we find the appellant has failed to prove that the State did not provide enough evidence to show Wiseman had knowledge of the fraudulent instrument, and he has failed to prove the trial court was in error in failing to grant his motion for a directed verdict or, in the alternative, a judgment notwithstanding the verdict. For these reasons, we affirm the verdict and rulings of the lower court.
¶ 19. THE JUDGMENT OF THE CIRCUIT COURT OF GRENADA COUNTY *982-984 OF CONVICTION OF UTTERING A FORGERY AND SENTENCE OF FIFTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AS A HABITUAL OFFENDER IS AFFIRMED. THIS SENTENCE IS TO RUN CONSECUTIVELY TO ANY SENTENCE PREVIOUSLY IMPOSED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO GRENADA COUNTY.
KING AND SOUTHWICK, P.JJ., IRVING, LEE, MOORE, MYERS, PAYNE, AND THOMAS, JJ., CONCUR. McMILLIN, C.J., NOT PARTICIPATING.